NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WILMINGTON SAVINGS FUND SOCIETY FSB, as Trustee of Stanwich Mortgage Loan Trust,<br><br>              Plaintiff,<br>v.<br><br>BERYL OTIENO-NGOJE,<br><br>              Defendant. | Civil Action No.: 16-5631 (WJM)<br><br><br><br><br>**MEMORANDUM<br>OPINION &ORDER** |

**FALK, U.S.M.J.**

Before the Court is Defendant's motion to (1) disqualify Plaintiff's counsel, Sandy Feltes, Esq. and Kaplin Stewart Meloff Reitner & Stein, PC; and (2) stay the case pending the outcome of state criminal charges. [ECF No. 49.] Plaintiff opposes the motion. [ECF No. 50.] No reply papers were submitted. Oral argument is not necessary. Fed. R. Civ. P. 78. For the reasons stated below, Defendant's motion to disqualify is **DENIED**. Defendant's motion to stay is **DENIED WITHOUT PREJUDICE**.

## RELEVANT BACKGROUND

### A. Factual Allegations

Plaintiff is a federal savings bank with its principal place of business in Wilmington, Delaware. Defendant is a New Jersey resident. In 2009, Defendant purchased a residential property located in Orange, New Jersey, which was subject to a mortgage at the time of its purchase. Through various purchases and assignments, Plaintiff came to be the owner of the property in 2015.

In November 2015, there was a fire at the property. In early 2016, Defendant made an insurance claim for the fire damage to Liberty Mutual Insurance Company. Liberty Mutual approved the claim and issued two checks totaling $340,544.62. The checks were jointly payable to three payees: (1) Defendant; (2) Carrington Mortgage Services, Plaintiff's agent and mortgage servicer; and (3) D. Simon & Associates, LLC, Defendant's adjuster. Thereafter, the adjuster endorsed the checks and delivered them to Defendant, who allegedly forged the Servicer's endorsement on both checks and deposited them into her personal bank account.

### B. Procedural History

On September 16, 2016, Plaintiff filed the Complaint alleging fraud and claiming that Defendant had absconded with the insurance proceeds. On September 20, 2016,

---

[1] The background is drawn from the Complaint, prior Opinions, and the papers submitted. Direct citations are omitted. Defendant disputes the allegations herein. However, for purposes of this motion only, the allegations in the Complaint are assumed to be true.

Plaintiff filed a motion for a preliminary injunction, seeking to enjoin Defendant from "further dissipating unlawfully obtained insurance proceeds." For a month after the motion was filed, counsel attempted to negotiate a consent injunction, but ultimately no agreement was reached. In an Opinion and Order issued on November 17, 2016, Judge Martini granted Plaintiff's motion for preliminary injunction.

An initial conference was held on February 28, 2017, and a Scheduling Order opening discovery was entered. Through July 2017, the parties engaged in discovery including the production of documents and depositions.

On July 7, 2017, Defendant's deposition was held. During the deposition, Plaintiff claims that "Defendant admitted for the first time that she forged Carrington's endorsement on the July 2016 Liberty Mutual check, deposited both Liberty Mutual checks into her personal bank accounts and used the insurance proceeds for her personal use, without the knowledge or consent of Plaintiff, Carrington, or Liberty Mutual." (Pl.'s Br. 3.)

On July 24, 2017, Plaintiff's counsel contacted the Essex County Prosecutor's Office and requested that it investigate the matter. (*See* Certification of Sandhya M. Feltes, Esq., ¶ 21 & Ex. 6.)

On October 2, 2017, Plaintiff learned, through an email from Defendant's counsel, that a criminal complaint had been filed against Defendant on September 28, 2017.

On October 10, 2017, the Undersigned held a conference, during which counsel

wished to, and did, place on-the-record certain facts with respect to the filing of the criminal charges. (*See* Transcript dated October 10, 2017; ECF No. 47.) As part of the discussion on the record, Defendant's counsel advised that he would be "filing a motion [to disqualify] with regards to what plaintiff's counsel just placed on the record." (Tr. 5:14-16.)

## **CURRENT MOTION**

On December 6, 2017, Defendant filed a four-page letter brief and certification seeking to disqualify Plaintiff's counsel for alleging violating the New Jersey Rules of Professional Conduct ("RPC"). Although the letter brief itself does not identify the RPC alleged to be violated, the certification and proposed order submitted with the motion both refer to RPC 3.4(g), which provides:

> RPC 3.4 Fairness to Opposing Party And Counsel
> A lawyer shall not:
> . . .
> (g) present, participate in presenting, or threaten to present criminal charges to obtain an improper advantage in a civil matter.

According to Defendant's submission, during efforts to negotiate a consent injunction, "numerous phone calls took place . . . between my office and Plaintiff's counsel where the potential for criminal charges were discussed. In the phone calls, I warned plaintiff's counsel about filing criminal charges if a civil matter was pending. In conversations with Plaintiff's counsel M[r] Feltes informed me that the Plaintiff would not file criminal charges, would proceed with the civil matter, and that the **only** action

Plaintiff would take aside from the instant litigation would be filing a federal form concerning notice of fraud pursuant to FDIC rules." (Certification of Michael A. Orozco, Esq., ¶ 5.)

Defendant's counsel claimed that he "relied upon the representations of plaintiff's counsel . . . that criminal charges would not be filed," and that "[h]ad there never been a representation from Plaintiff's counsel that criminal charges would not be filed the undersigned would have properly advised Defendant Ngoje to invoke her [F]ifth [A]mendment rights." (Br. 2.) Defendant contends that this conduct violates RPC 3.4(g); is "so egregious that counsel's continued representation should not be tolerated"; and that disqualification is necessary to "send[] a clear message to the members of the bar that this type of conduct will not be tolerated." (*Id*.)

Plaintiff's counsel disputes both Defendant's version of the events and the applicability of RPC 3.4(g). He contends that RPC 3.4(g) does not prohibit an attorney from presenting or participating in presenting criminal charges "under any circumstances," and that such presentation is prohibited only when undertaken for purposes of securing an advantage in a pending civil case. Counsel contends no advantage has been obtained in the civil case and that none has been identified. Finally, Plaintiff's counsel disputes that criminal proceedings were ever discussed with Defendant's counsel:

- First and foremost, the record of communications between

> Plaintiff's counsel and defense counsel evidences that there was absolutely no discussion of criminal charges in the context of the civil action. While defense counsel claims that other communications occurred, these claims are both false and are directly contradicted by the record." (Pl.'s Br. 5.);

- Plaintiff's . . . intention to pursue criminal charges was not discussed in connection with the proposed consent injunction. (Feltes Cert., ¶ 11);

- [T]here was absolutely no discussion between counsel about criminal charges against Defendant and that issue was not part of the negotiations, (Feltes Cert., ¶ 17);

- At no time did I suggest to defense counsel that Plaintiff . . . would not pursue criminal charges if Defendant agreed to the proposed consent injunction, (Feltes Cert., ¶ 18.)

## **DECISION**

Local Civil Rule 103.1(a) establishes that the Rules of Professional Conduct ("RPC") as revised by the Supreme Court of New Jersey govern the conduct of the members of the bar admitted before this Court. *See United States v. Balter*, 91 F.3d 427, 435 (3d Cir. 1996), *cert. denied*, 519 U.S. 1011 (1996). The party seeking disqualification must carry a heavy burden and must meet a "high standard of proof before a lawyer is disqualified." *Phelps v. D&S Consultants, Inc.*, 2010 WL 3186241, at *5 (D.N.J. Aug. 10, 2010).

Attorney disqualification is never automatic, even when a disciplinary rule prohibits an attorney's appearance in a case. *United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980). Motions to disqualify are generally disfavored because they can have

"such drastic consequences." *Rohm & Haas Co. v. American Cyanamid Co.*, 187 F. Supp. 2d 221, 226 (D.N.J. 2001). "Such disfavor results from the reality that motions to disqualify are sometimes made solely for 'tactical reasons,' and that even when they are made in good faith, motions to disqualify cause inevitable delay in the underlying proceedings and create additional hardships to the opposing party." *Prudential Ins. Co. of Am. v. Chelchowski*, 2017 WL 1549466, at *3 (D.N.J. Apr. 28, 2017) (citing *Carlyle Towers Condo Assoc., Inc. v. Crossland Savings, FSB*, 944 F. Supp. 341, 345 (D.N.J. 1996)). As a result, careful scrutiny of the facts of each case is required to prevent unjust results, and "resolution of a motion to disqualify requires the court to balance the need to maintain the highest standards of the legal profession against the right to freely choose counsel." *Steel v. General Motors Corp.*, 912 F. Supp. 724, 733 (D.N.J. 1995). Notably, "ethical rules should not be blindly applied without consideration of the relative hardships." *Carlyle Towers*, 944 F. Supp. at 345.

Here, the Court finds no basis to disqualify counsel.

**First**, Defendant has not established that Plaintiff's counsel violated RPC 3.4(g). The parties have completely different versions of the events—one side says the intention to file criminal charges was discussed, the other swears it was not. This is a fact dispute and one that has nothing to do with the merits of this case. Such a disagreement might be for a different tribunal at a different time. But it is not part of this civil case.

Moreover, Defendant has not established that presenting or participating in

presenting the criminal charges was done for the purpose of obtaining any advantage in the civil case. Nor is there any evidence that the charges have had any effect on the civil case.

In addition, as a practical matter, District Ethics Committees almost always defer consideration of accusations of disciplinary violations against an adversary in an ongoing civil case until the conclusion of the case. *Cf.* N.J. Ct. R. 1:20-3(f); *Levine v. Levine*, 381 N.J. Super. 1, 5 n.3 (App. Div. 2005). This is done for a variety of reasons, perhaps most importantly to discourage the use of accusations as a litigation tactic. Here, no formal accusation has been made to the Court's knowledge, and certainly no finding has been made. Thus, another reason to deny disqualification.

**Second**, Defendant has not cited <u>any</u> relevant authority—and certainly none involving RPC 3.4(g)—to support disqualification. Moreover, the Court's own research has not uncovered a New Jersey case where a lawyer was disqualified in an ongoing civil case based on a violation of RPC 3.4(g).[2] Disqualification is considered a serious sanction and is never automatic. *United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980). Even if Plaintiff's counsel did violate RPC 3.4(g), which has not been shown,

---

[2] For example, *In re Barrett*, 88 N.J. 40 (1982), involved review of a Disciplinary Review Board's application of RPC 3.4(g), but not the disqualification of counsel. Likewise, *Ruberton v. Gabage*, 280 N.J. Super. 125 (App. Div. 1995), did not involve disqualifcation of counsel, but rather addressed whether a defense attorney's threat to file criminal charges amounts to actionable malicious abuse of process.

Defendant has failed to establish that disqualification would be the proper remedy.

**Third**, the stage of the proceedings would weigh against disqualification in all events. Plaintiff's counsel represents that discovery is complete and that it would like to file a motion for summary judgment. (Pl.'s Br. 7.) Even if there was a violation of RPC 3.4(g), the Court fails to see what the point of replacement counsel would be at this time. Whatever alleged "damage" has been done, is done. This is not, for example, a case where a party alleges that its former counsel is now representing an adversary party and revealing confidential or privileged information on an ongoing basis. There is no continuing and ongoing prejudice that would result if current counsel remained, and Defendant does not identify any. Moreover, even if substitute counsel entered an appearance, they presumably would seek to file a dispositive motion based on the already developed factual record.[3]

---

[3] Defendant's notice of motion also requests to "stay this matter pending outcome of state criminal charges." However, the body of the motion has no discussion of this request, does not address the relevant standard, and does not include any information about the status of the criminal proceedings. Based on the lack of information provided, there is no basis to stay the case at this time, and the request is **DENIED WITHOUT PREJUDICE**.

If Defendant wishes, she is free to renew the motion to stay by providing a factual basis and addressing the relevant case law, *see, e.g.*, *Walsh Sec. v. Cristo Property Mgmt., Ltd.*, 7 F. Supp. 2d 523 (D.N.J. 1998).

## CONCLUSION

For the reasons set forth above, Defendant's motion to disqualify [ECF No. 49] is **DENIED**. Defendant's motion to stay is **DENIED WITHOUT PREJUDICE**.

<u>s/Mark Falk</u>
**MARK FALK**
**United States Magistrate Judge**

**Dated: June 19, 2018**