**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **WILMINGTON SAVINGS FUND SOCIETY, FSB as Trustee of Stanwich Mortgage Loan Trust A,** | Civ. No.: 2:16-05631 (WJM) |
| Plaintiff, | **OPINION** |
| v. | |
| **BERYL OTIENO-NGOJE,** | |
| Defendant. | |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff Wilmington Savings Fund Society ("Wilmington") brings this action against Defendant Beryl Otieno-Ngoje, alleging counts of conversion, unjust enrichment, and fraud, in connection with Defendant's purported illegal appropriation of insurance proceeds. This matter comes before the Court on Plaintiff and Defendant's cross-motions for summary judgment. There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, Plaintiff's motion for summary judgment, ECF No. 71, is **GRANTED** and Defendant's motion for summary judgment, ECF No. 72, is **DENIED**.

**I.     BACKGROUND**

This case is a dispute over the proper owner of insurance proceeds issued in connection with a residential property damaged by fire. On January 25, 2008, Defendant Ngoje and her business partner, Auslene Simon, closed on property located at 403 Lawnridge Road, Orange, New Jersey. Pl.'s Mot. Summ. J. Ex. 1, 15:19-24, 16:1-4. GFI Mortgage, Inc. financed the purchase of the property through a residential mortgage loan in the amount of $275,400. The residential mortgage loan was secured by a mortgage. Pl.'s Mot. Summ. J. Ex. 2. The mortgage provided in relevant part:

> All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgage as an additional loss payee. . . . In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. . . . [A]ny insurance proceeds . . . shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. . . . If the restoration or repair is not economically feasible or Lender's security

> would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.
>
> Borrower shall not destroy, damage, or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further determination or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property . . .
>
> The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

*Id.* In 2009, GFI Mortgage, Inc. assigned and sold the Mortgage to Wells Fargo Bank, N.A. See Pl.'s Mot. Summ. J. Ex. 3. In 2012, Wells Fargo Bank, N.A. sold and assigned the Mortgage to U.S. Bank National Association as Legal Title Trustee 2012 SC Title Trust. Pl.'s Mot. Summ. J. Ex. 4. In January 2016, the Mortgage and Note were sold and assigned to Plaintiff Wilmington. Pl.'s Mot. Summ. J. Ex. 5.

On June 26, 2009, Simon transferred ownership of the property to Ngoje for $1.00. *Id.* Ex. 1 at 34, Ex. 6. Defendant Ngoje and her family moved into the property sometime in 2011, continued to live there until November 2015, but by 2009, stopped making mortgage payments. Ex, 1 at 36, 44. On April 30, 2011, Ngoje purchased a homeowner's insurance policy from Liberty Mutual. *Id.* Ex. 1 at 52, Ex. 12. The policy provided insurance coverage for damage to the dwelling and contents caused by a fire at the property. *Id.* Ex. 6. The policy names Ngoje as the named insured and Wells Fargo Bank, its successors and assigns, as the mortgagee. *Id.* The policy provides that Liberty Mutual payment for losses will be made jointly to the insured and to the mortgagee, or the mortgagee's trustee. Pl.'s Mot. Summ. J. Ex. 7, at 10. Ngoje renewed the insurance policy each year through 2015. Each successive insurance policy identified Wells Fargo Bank, its successors and assigns, as the mortgagee and contained an identical mortgagee clause. Defendant Ngoje contemporaneously received each declarations page identifying Wells Fargo Bank, its successors and assigns, as the mortgagee, as well as the insurance policy containing the mortgagee clause.

On November 30, 2015, a fire damaged the property and was henceforth been uninhabitable. A few weeks after the fire, Wells Fargo Bank, N.A. sold and assigned all of the rights, title, and interest in the mortgage and property to Plaintiff Wilmington. *Id.* Ex. 1 at 60, Ex. 3. Wilmington retained Carrington Mortgage Services, LLC to service the mortgage loan. At the time of the fire, the sum of $423,896.62 was due and owing on the mortgage. *See id.* at Ex. 7. Within days of the fire, Ngoje made a claim against the

insurance policy, representing to Liberty Mutual that she intended to repair the house with the insurance proceeds. *Id.* at Ex. 12.

From December 2015 to July 2016, Liberty Mutual sent Ngoje at least four written communications advising her that the mortgage company may be listed as a payee on insurance proceeds checks and directing Ngoje to contact the mortgage company about processing the insurance proceeds payments: "Your current mortgage company may be listed as the payee on payment(s) for the covered repairs to your home. If so, you will need to contact your mortgage company to determine their procedures for processing claims payments. . . ." *Id.* Ex 1 at 71-74, 79, 94, Ex. 8.

Liberty Mutual determined that the value of the damage to the property was $408,554.79 and after accounting for depreciation, agreed to pay $292,658.44 with an additional amount to be paid upon completion of repairs to the property. *Id.* Ex. 1 at 81. Because the insurance policy contained a mortgagee clause, Liberty Mutual asked Defendant and the public adjuster for the name of the current mortgagee for purpose of issuing an insurance proceeds check payable jointly to the Defendant and the mortgagee. *Id.* Ex. 9. On May 16, 2016, Liberty Mutual issued a check in the amount of $292,658.44 payable to Ngoje, D. Simon & Associates, and Carrington. Ex. 10. Liberty Mutual sent the check to David Simon. *Id.* Ex. 9 at 62. Mr. Simon endorsed the check and provided it to Ngoje with instructions that she contact Carrington to determine how the mortgage company would like the insurance proceeds handled. *Id.* Ex. 9 at 65-66. Without contacting Carrington or Plaintiff Wilmington, Ngoje forged Carrington's endorsement on the May check and deposited the entire insurance proceeds check into her personal bank account at JPMorgan Chase Bank. *Id.* Ex. 12, ¶¶ 4-8, 10-12. In July 2016, Liberty Mutual adjusted the value of the damage to the dwelling upward to $470,302.12. *Id.* Ex. 1 at 93. Consequently, on July 29, 2016, Liberty Mutual issued a second insurance proceeds check in the amount of $47,906.19. *Id.* Ex. 1 at 95-96. Like the first check, the second check was jointly payable to Ngoje, D. Simon & Associates, and Carrington. Liberty Mutual sent the check to David Simon, who endorsed it and provided it to Ngoje with instructions that Ngoje contact Carrington regarding the insurance proceeds. *Id.* Ex. 9, 71-72. Without contacting or alerting Carrington about the July check, Ngoje deposited the insurance proceeds into her personal bank account at JPMorgan Chase Bank. *Id.* Ex. 12, ¶¶ 13-14, 16-18.

During 2016, Defendant Ngoje used $340,000 of insurance proceeds for a variety of personal matters such as to support her business by bidding on sheriff's sale properties, making repairs to Defendant's other property in Hillside, New Jersey, and purchasing goods and shipping those goods overseas in support of Defendant's husband's business. None of the insurance proceeds were used to repair the Property. *Id.* Ex. 1 at 102, 105, Ex. 12 at ¶ 12.

Plaintiff filed its complaint on September 16, 2016, to recover the Liberty Mutual insurance proceeds in the amount of $340,000. ECF Nos. 1, 4. Plaintiff Wilmington asserts claims against Defendant for conversion, unjust enrichment, and fraud. On

3

November 17, 2016, the Court granted Plaintiff's motion and enjoined Defendant from transferring assets and placing a constructive lien on the sheriff's sale deposits. *Id.* Ex. 14.

## II. LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A fact is material if its determination might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). A dispute is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id.* To make this determination, the Court views the facts in the light most favorable to the nonmovant and all reasonable inferences must be drawn in the nonmovant's favor. *Scott v. Harris*, 550 U.S. 372, (2007); *Green v. New Jersey State Police*, 246 F. App'x 158, 159 (3d Cir. 2007).

The moving party bears the burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant meets this burden by pointing to an absence of evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial. *Id.* at 325. If the moving party carries this initial burden, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *United States v. Donovan*, 661 F.3d 174, 185 (3d Cir. 2011) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (internal quotation marks omitted)).

## III. DISCUSSION

Plaintiff Wilmington asserts claims against Defendant for conversion, unjust enrichment, and fraud. In sum, Plaintiff contends that it is entitled to, the Liberty Mutual insurance policy proceeds because: (1) the mortgagee clause in the Liberty Mutual Insurance Policy provides that payment for loss to the Property would be made jointly to the insured (Defendant Ngoje) and the mortgagee (Plaintiff Wilmington) as their interests in the Property appear; (2) Plaintiff Wilmington had a first lien security interest in the Property and in the Policy; (3) the dollar value of Plaintiff Wilmington's interest at the time that the loan proceeds were distributed was in excess of the amount of the loan proceeds; and (4) therefore, Plaintiff Wilmington was legally entitled to the full amount of the Liberty Mutual Insurance Policy proceeds.

### A. Conversion

"Conversion is an intentional exercise of domain or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Chicago Title Ins. Co. v. Ellis*, 978 A.2d 281, 287 (App. Div. 2009) (quoting *Restatement (Second) of Torts* § 222A(1)). To

state a claim for conversion, a plaintiff must establish: (1) the existence of property; (2) the right to immediate possession of the property; and (3) the wrongful interference by a defendant." *Corestar Int'l Pte LTD v. LPB Commc'ns, Inc.*, 513 F. Supp. 2d 107, 127 (D.N.J. 2007). "The crux of conversion is wrongful exercise of dominion or control over property of another without authorization and to the exclusion of the owner's rights in that property. *Ellis*, 978 A.2d at 288. "Where a sum of money is identifiable, courts look to the relative rights of each party to possession and use of the money to determine whether a cause of action lies for conversion." *Id.*

### 1. Plaintiff Wilmington's Right to the Liberty Mutual Insurance Proceeds

The Liberty Mutual Insurance Policy contains a mortgage clause which expressly provides for the named mortgagee (or its successors and its assigns) to receive insurance proceeds for losses to the insured property to the extent of its interest. Wells Fargo Bank was the mortgagee named on the Liberty Mutual Insurance Policy. However, at the time that Liberty Mutual disbursed the insurance proceeds, Wells Fargo Bank had assigned the mortgage to Plaintiff Wilmington. As the assignee, Wilmington was entitled to the insurance proceeds to the extent of its insurable interest. *See Liberty Mutual Fire Insurance Company v. Alexander*, 864 A.2d 1127 (App. Div. 2005) ("[t]he standard mortgage clause in the homeowner's insurance policy is an independent agreement between the insurer and the mortgagee that entitles the mortgagee to recover the insurance proceeds for damages to the insured's property"). If "the property owner remains the title owner of the property, a mortgagee has the right to apply fire insurance proceeds to the outstanding debt in the absence of any agreement to the contrary . . . ." *Id.* at 1133.

The Liberty Mutual Insurance Policy, here, contains a standard mortgage clause which provides for payment of insurance proceeds to the mortgagee. *See* Def.'s Mot. Ex. 6. At the time that Liberty Mutual disbursed the insurance proceeds for the fire damages to the property, Wilmington was the mortgagee on the property. *See id.* at Ex. 3. In accordance with the obligations created by the mortgagee clause, Liberty Mutual made the May check and July check payable to Wilmington's agent, Carrington Mortgage Services. *Id.* at Exs. 10, 11. New Jersey law gives Plaintiff Wilmington the legal right to the insurance proceeds to apply to the outstanding debt.

### 2. Defendant Ngoje's Wrongful Interference with Plaintiff's Right to Possession of the Insurance Proceeds

Defendant need not knowingly or intentionally act wrongfully for a conversion to occur. *Ellis*, 978 A.2d 281; *Delzotti v. Morris*, 2015 WL 5306215, *9 (D.N.J. 2015) (conversion does not require that defendant have an intent to harm the rightful owner, or know that the money belongs to another). Rather,

5

[t]he general rule is that one who exercises unauthorized acts of dominion over the property of another, in exclusion or denial of his rights or inconsistent therewith, is guilty of conversion although he acted in good faith and in ignorance of the rights or title of the owner. The state of knowledge with respect to the rights of such owner is of no importance, and cannot in any respect affect the case.

*McGlynn v. Schultz*, 218 A.2d 408 (Ch. Div. 1966). The repudiation may be manifested in the injured party's demand for the funds and the tortfeasor's refusal to return the money sought. *Bondi v. Citigroup, Inc.*, 32 A.3d 1158, 1190 (App. Div. 2011).

Defendant Ngoje's contention that she "reasonably, innocently and honestly believed the check was hers" is contradicted by Defendant Ngoje's sworn deposition testimony, as well as the deposition testimony of Defendant's public adjuster and the documents. Both insurance proceeds checks were jointly payable to Carrington on the face of each check. Defendant admits signing Carrington's name on the May, 2016 check without Carrington's permission. Pl.'s Mot. Ex. 12. At the time that she received the insurance proceeds checks, Defendant knew that the mortgage company claimed a right to the insurance proceeds. *Id.* Ex. 1 at 77-78. David Simon, Defendant's public adjuster, gave specific instructions to turn over the insurance proceeds checks to the mortgage company. Ex. 9 at 65-66. Defendant was aware that Carrington was a joint payee on each check and that the mortgage company had asserted a right to the insurance proceeds. She has also been expressly directed by her public adjuster to send the insurance proceeds checks to the mortgage company. Instead, Defendant made a calculated decision not to send the insurance proceeds because she did not want to keep the property.

Defendant Ngoje admits that she took the insurance proceeds checks, forged Carrington's endorsement on the May check and deposited the checks into her personal bank accounts. *See* Def's Mot. Exs. 1, 12. After taking possession of the insurance proceeds checks, Defendant Ngoje refused to turn over the insurance proceeds to Plaintiff Wilmington. Because Plaintiff has a right to the insurance proceeds to pay down the $443,000 debt owed on the mortgage loan, Defendant Ngoje converted those insurance proceeds.

### B. Unjust Enrichment

In New Jersey, "[t]o establish a claim for unjust enrichment . . . a plaintiff must show both that the defendant received a benefit and that retention of that benefit without payment would be unjust." *Stewart v. Beam Global Spirits & Wine, Inc.*, 877 F. Supp. 2d 192, 196 (D.N.J. 2012). A plaintiff must allege that: (1) at plaintiff's expense; (2) defendant received benefit; (3) under circumstances that would make it unjust for defendant to retain said benefit without paying for it. *Maniscalco v. Brother Intern. Corp. (USA)*, 627 F. Supp. 2d 494, 505 (D.N.J. 2009).

Defendant Ngoje was unjustly enriched in the amount of $340,544.65. Defendant Ngoje deposited into her personal account insurance proceeds to which Plaintiff Wilmington was entitled. By forging Carrington's endorsement on the May check and retaining the funds, Defendant Ngoje was enriched in the amount of $292,638.46. *See* Ex. 11. By depositing and retaining the funds from the July check, Defendant Ngoje was enriched by an additional $$47,906.19. *See* Ex. 12. Plaintiff Wilmington had a right to the insurance proceeds in order to compensate it for the loss of value to its mortgage interest caused by near total destruction by fire of the Property. At the time of the fire, the security interest exceeded $443,000. *See* Ex.8.

### C. Fraud

Under New Jersey law, fraud consists of: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Gennari v. Weichert Co. Realtors*, 691 A.2d 350 (1997).

Defendant Ngoje committed fraud by forging Carrington's endorsement on the May check. By depositing and retaining the insurance proceeds, Defendant falsely represented that she had exclusive right, title and interest to the insurance proceeds. Defendant Ngoje also committed fraud by omission by failing to disclose to Plaintiff WSFS that she had received insurance proceeds from Liberty Mutual. Ex. 1 at 98.

Defendant Ngoje intentionally made the aforesaid false representations and omissions of material fact in order to unlawfully abscond with the insurance proceeds. Defendant Ngoje further intentionally concealed from Plaintiff WSFS that she received, deposited and spent the insurance proceeds. Plaintiff WSFS is harmed by Defendant's fraud because it was unable to use the proceeds to repair the property thereby decreasing the value of the property and its mortgage lien.

### IV. CONCLUSION

Accordingly, Plaintiff's motion for summary judgment, ECF No. 71, is **GRANTED** and Defendant's motion for summary judgment, ECF No. 72, is **DENIED**. An appropriate order follows.

**Dated: February 14, 2020**

*/s/ William J. Martini*
**WILLIAM J. MARTINI, U.S.D.J.**

7